## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

AMY VIGGIANO
Individually And On Behalf Of All Others
Similarly Situated,

      Plaintiff,

v.

LAKESHORE EQUIPMENT COMPANY,

      Defendants.

Civil Action No.: 17-cv-00707 (PGS)

**MEMORANDUM AND
ORDER**

SHERIDAN, U.S.D.J.

This matter comes before the Court on Defendant Lakeshore Equipment Company's Motion to Dismiss Plaintiff Amy Viggiano's Complaint on four separate grounds: (1) lack of subject matter jurisdiction pursuant Federal Rule of Civil Procedure 12(b)(1); (2) failure to state a claim pursuant Federal Rule of Civil Procedure 12(b)(6); (3) to strike class allegations pursuant Federal Rule of Civil Procedure 12(f); and (4) to stay this case pending resolution of another matter by the Federal Circuit. The case arises from promotional text message which Plaintiff received about educational materials that Defendant sold. The parties dispute the reasonableness of Plaintiff's attempts to revoke her prior express consent and whether the device used to send text messages satisfies one of the elements of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (TCPA). For the reasons stated below, the Court denies Defendant's motions.

### BACKGROUND

Plaintiff brought this suit, on behalf of herself and similarly situated plaintiffs, alleging violations of the TCPA by Defendant. In this putative class action, Plaintiff alleges that in 2016 she consented to receiving automated commercial text messages from Defendant. According to

1

the Complaint, Defendant used an "automatic telephone dialing system" (ATDS) to deliver these messages. (Complaint ["Compl."] at ¶ 12). The ATDS has the ability to store or produce telephone numbers using a random or sequential generator. (*Id.*). After initially enrolling in Defendant's text program, Plaintiff claims to have revoked her consent by indicating to Defendant the following messages: "Please take me off the list;" "Please don't send me these [texts] anymore;" and "I've had enough! This is your last warning! I've told you to stop several times and you haven't." (*Id.* at ¶ 13). Plaintiff alleges that Defendant refused to stop sending her text messages after she withdrew her consent. (*Id.* at ¶ 14). Defendant indicated to Plaintiff that the only way to withdraw her consent to receive unwanted text messages from Defendant was to text "STOP." (*Id.*).

Defendant, in opposition, sets forth additional facts by way of an affidavit from Ray Palmer, Defendant's Vice President of Business Processes. (ECF No. 6-2, "Palmer Declaration"). These allegations focus on whether Plaintiff adequately followed directions to "opt-out" or whether she intentionally disregarded instructions in order to manufacture an injury. The Palmer Declaration alleges the following. Defendant is in the business of creating educational materials and provides its in-store and online customers the opportunity to enroll in Lakeshore offers and news by texting the word "JOIN" to a program's short code. (*Id.* at ¶¶ 2-3). This program advises consumers that by enrolling they will receive, via text message, promotional offers and notifications; it also includes an electronic link to the Terms & Conditions that control. (*Id.* at ¶ 4). When customers visit Defendant's website and click on "Sign Up" for exclusive text offers and deals, they are presented with the following information:

**How do I unsubscribe/opt out?**
Simply text STOP to 39714.

(*Id.* at ¶ 5). Additionally, the terms and conditions state, "By texting JOIN to 39714, you are

agreeing to receive promotional offers and notifications from Lakeshore Learning Materials."

(*Id*.).  After a consumer sends a text containing the keyword JOIN, he or she then receives the

following message from Defendant:

> Reply Yes to get 10 autodialed marketing msgs/month @ this #. Text opt-in not
> required for purchase. Msg&Data rates may apply. Bit.ly/MobileTC

(*Id.* at ¶ 7). After the consumer sends a "Yes" text response, he or she will immediately receive

the following message:

> Thank you for joining Lakeshore Promo Alerts! Stay tuned for great deals. Reply
> HELP 4 help. Reply STOP 2 cancel.

(*Id*. at ¶ 8).  Once enrolled, each promotional message sent to the enrolled customer, ends with the

following message: "ToCancelReplySTOP." (*Id*. at ¶ 9).  Defendant's automated system also

accepts the following messages to cancel future texts from Defendant: "CANCEL," "DO NOT,"

"DON'T," "END," "NO," "NO MORE," "OPT OUT," "QUIT," REMOVE," "TERMINATE,"

and "UNSUBSCRIBE." (*Id*. at ¶ 10).  If, at any time, a consumer sends a text with an unrecognized

word, or an invalid response, he or she will receive the following message:

> Sorry, we don't recognize that word. Reply w/your keyword to opt-in. Reply HELP
> 4 help. Reply STOP 2 cancel. Msg&Data rates may apply. bit.ly/MobileTC

(*Id.* at ¶ 11)

According to Defendant's records, on November 18, 2016 at 8:21 p.m., Lakeshore received

an inbound text message containing the keyword "JOIN" from plaintiff's phone number. (*Id.* at ¶

14).  In response to the inbound text message, Defendant's system sent the following message to

Plaintiff:

> Reply Yes to get 10 autodialed marketing msgs/month @ this #. Text opt-in not
> required for purchase. Msg&Data rates may apply. Bit.ly/MobileTC

(*Id.* at ¶ 15).  Immediately thereafter, Defendant received an inbound text message from Plaintiff's number that said "Yes."  The system then sent the following:

> Thank you for joining Lakeshore Promo Alerts! Stay tuned for great deals. Reply HELP 4 help. Reply STOP 2 cancel.

(*Id.* at ¶¶ 16-17).  On multiple occasions, Lakeshore messages advised Plaintiff that she could unsubscribe from the text-messaging program simply by texting "STOP" as a return text message. (*Id.* at ¶ 20).

Three days after enrolling, on November 21, 2016, Defendant received the following message from Plaintiff, "I've changed my mind and don't want to receive these anymore." (*Id.* at ¶ 21).  The system did not recognize this message from Plaintiff, and immediately responded saying:

> Sorry, we don't recognize that word. Reply w/your keyword to opt-in. Reply HELP 4 help. Reply STOP 2 cancel. Msg&Data rates may apply. bit.ly/MobileTC

(*Id.* at ¶ 22).  Five days later, Defendant received another inbound text message from Plaintiff, "Please take me off this list." (*Id.* at ¶ 23).  Again, the system responded with the same, "we don't recognize that word," message that also included the instruction "Reply STOP 2 cancel." (*Id.* at ¶ 24).  On November 29, 2016, Lakeshore received another inbound text message from plaintiff, indicating: "Please do not send me these anymore." Again, the system responded in the manner indicating that it did not recognize the message containing the instruction, and noted to reply "STOP" to unsubscribe. (*Id.* at ¶¶ 25-26).

Finally, on December 1, 2016, Defendant received the following inbound text message from plaintiff's number, "I've had enough! This is your last warning! I've told you to stop several times and you haven't." (*Id.* at ¶ 27).  Once again the same messages followed by Defendant to Plaintiff; instructing plaintiff to reply "STOP" to unsubscribe. (*Id.* at ¶ 28).  Lakeshore never

received the message "STOP" from plaintiff and no other messages were sent by Plaintiff before initiating this suit. (*Id.* at ¶¶ 29-30).

**ANALYSIS**

I.        Rule 12(b)(1) Subject Matter Jurisdiction

Defendant asserts that Plaintiff's Complaint should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) because Plaintiff has not established standing to warrant federal court jurisdiction. Specifically, Defendant alleges that Plaintiff has failed to allege any concrete injury. (Def.'s Br. at 22-23). In response, Plaintiff argues that the Supreme Court in *Spokeo*, *Inc. v. Robins*, 136 S.Ct. 1540, 1549 (2016) recognized intangible injuries as actionable. Moreover, since a cause of action under the TCPA is essentially an intangible injury, Plaintiff claims the Court has subject matter jurisdiction. With reservation, the Court agrees.

Under Federal Rules of Civil Procedure 12(b)(1) a claim can be dismissed for "lack of jurisdiction over the subject matter." This motion to dismiss may be asserted at any time in a case. *In re Kaiser Group Int'l, Inc.*, 399 F.3d 558, 565 (3d Cir. 2005). In a motion to dismiss based on subject matter jurisdiction, "the standard . . . is much more demanding [than the standard under 12(b)(6)]." 'When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion.'" *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (quoting *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

If the defendant's attack is facial, the court may take all allegations in the complaint as true and "may dismiss the complaint only if it appears to a certainty that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction." *Liu v. Gonzales*, No. 07-1797, 2007 U.S. Dist. LEXIS 74611, at *7 (D.N.J. Oct. 5, 2007). The standard of review differs substantially when the challenge is factual. Then, there is no presumption of truthfulness to a plaintiff's claims in the

5

complaint. *RLR Invs., LLC v. Town of Kearny*, No. 06-4257, 2007 U.S. Dist. LEXIS 44703, at *8 (D.N.J. June 20, 2007) (citations omitted).

Thus, consideration of the motion does not have to be limited; conflicting evidence may be considered so that the court can decide factual issues that may bear on its jurisdiction. *Id.* Furthermore, "[w]hen resolving a factual challenge, the court may consult materials outside the pleadings, and the burden of proving jurisdiction rests with the plaintiff." *Med. Soc'y of N.J. v. Herr*, 191 F. Supp. 2d 574, 578 (D.N.J. 2002) (citing *Gould Elecs. Inc. v. U.S.*, 220 F.3d 169, 176 (3d Cir. 2000)). However, "[w]here an attack on jurisdiction implicates the merits of plaintiff's [f]ederal cause of action, the district court's role in judging the facts may be more limited." *RLR Invs., LLC*, 2007 U.S. Dist. LEXIS 44703, at *9 (internal citations omitted).

The Court finds Defendant's Rule 12(b)(1) arguments unpersuasive, since the present cause of action arises under a federal statute. Moreover, the Third Circuit in *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351 (3d Cir. 2017), expressly held that a concrete injury has been pled when the complaint asserts "the very harm that Congress sought to prevent." (internal quotation marks and citation omitted). Here, the Complaint is predicated on receiving unsolicited advertisements text messages from an automatic telephone dialing system, after Plaintiff revoked consent to receive such calls, which is "prototypical conduct proscribed by the TCPA." *Id.*; *see also* 47 U.S.C. §227 (b)(1)(C).

Additionally, the allegations set forth in the Palmer Declaration are fact issues as to whether Plaintiff adequately revoked her consent. This is a defense to whether Plaintiff has demonstrated a concrete harm under *Susinno*. Defendant may re-open the issue if the evidence shows that Plaintiff manufactured her injury. That is, according to the Palmer Declaration, the present matter was manufactured by Plaintiff and that the "TCPA was not enacted to protect individuals from

their own nefarious conduct." (Def.'s Reply Br. at 1); *see also Stoops v. wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 801 (W.D. Pa. 2016) ("It is well settled that a plaintiff 'cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending." (internal quotation marks and citations omitted)). More specifically, "Congress passed the TCPA to protect individual consumers from receiving intrusive and unwanted calls." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 268 (3d Cir. 2013); *see also* 47 U.S.C. § 227. Here, it is undisputed that Plaintiff purposefully joined Defendant's program by texting J-O-I-N, and then Y-E-S to confirm. However, Defendant contends that Plaintiff, in attempting to revoke consent, intentionally chose to text long complicated sentences, instead of texting S-T-O-P, so that she could bring this lawsuit. (Def.'s Reply Br. at 4). However, as noted above, in order to decide whether Plaintiff manufactured her claim requires a factual determination that can only be determined after discovery, at which point the credibility of witnesses and the reasonableness of Plaintiff's attempts to unsubscribe can be adequately assessed.[1]  As such, the Court dismisses Defendant's 12(b)(1) motion without prejudice and the parties may re-open the manufactured injury issue, if appropriate, after discovery has commenced. However, for the present motion, since Plaintiff's Complaint is grounded upon the TCPA, the Court has subject matter jurisdiction. *See* 28 U.S.C. § 1331.

---

[1] In a supplemental brief, Defendant relies on Judge Martinotti's recent decision in *Viggiano v. Kohl's Dep't Stores, Inc.*, No. 17-0243, 2017 U.S. Dist. LEXIS 193999 (D.N.J. Nov. 27, 2017), wherein the court dismissed the plaintiff's complaint with prejudice, after concluding that she failed to state a claim under the TCPA, since her attempts to revoke consent were unreasonable. *Id.* at *9-10. However, as discussed above, at this stage of litigation, the Court finds any determination on the reasonableness of Plaintiff's revocation to be premature, and better addressed after reasonable discovery has been conducted.

II.      Rule 12(b)(6) Failure to State a Claim

Defendant next seeks dismissal of Plaintiff's TCPA claims, since she has failed to state a claim for which relief can be granted.  Specifically, because Defendant provided a reasonable means for revoking consent to receive promotional test messages and did not use an ATDS, Defendant contends that Plaintiff lacks any basis for asserting claims under the TCPA.  The Court disagrees, since these issues are factual disputes that are ordinarily reviewed on summary judgment, as opposed to a motion to dismiss.

On a motion to dismiss for failure to state a claim, the Court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d Cir. 1994). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *Iqbal*, 556 U.S. at 678-79; *see also Morse v. Lower Merion School District*, 132 F.3d 902, 906 (3d Cir. 1997). A complaint should be dismissed only if the well-pleaded alleged facts, taken as true, fail to state a claim. *See In re Warfarin Sodium*, 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not

8

whether that person will ultimately prevail. *Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2001).

"The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" *Kost v. Kozakewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (2d ed. 1990)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* As noted above, the allegations set forth in the Palmer Declaration are not asserted in the Complaint and are not documents integral to the Court's disposition of the present motion. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (noting that a district court may consider extraneous documents, without converting a motion to dismiss into one for summary judgment, when the document is deemed "integral to or explicitly relied upon in the complaint").

To sustain a claim under the TCPA, a plaintiff must establish three elements: "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (citing 47 U.S.C. § 227(b)(1)). While it is undisputed that Plaintiff initially provided express consent, Plaintiff alleges she attempted to revoke consent, but the automated dialing system would not accept her revocation. (Pl's Br. 4-5). As such, the Court limits its focus on whether Plaintiff satisfies elements two and three.

9

*1.    Revocation of Express Consent*

Turning to element three, Defendant, relying on the Palmer Declaration, contends that Plaintiff's attempt to revoke consent was unreasonable. In this motion, the Court focuses on the allegations of the Complaint and may not rely on integral documents. The Palmer Declaration does not fall within that standard and it is not considered.

In its 2015 Declaratory Ruling and Order, the FCC clarified how consumers may revoke consent. *See In re Rules & Regulations Implementing the TCPA of 1991*, 30 F.C.C. Rcd. 7961 (July 10, 2015) (hereinafter, "2015 Order").  The 2015 Order explained, "consumers have a right to revoke consent, using any reasonable method including orally or in writing." *Id.* at 7996 ¶ 64. The FCC also provided guidance for courts seeking to determine the reasonableness of a consumer's revocation:

> When assessing whether any particular means of revocation used by a consumer was reasonable, we will look to the facts and circumstances surrounding that specific situation, including, for example, whether the consumer had a reasonable expectation that he or she could effectively communicate his or her request for revocation . . .

*Id.* at 7996 ¶ 64 n.233.  Here, Defendant contends that Plaintiff's efforts to revoke consent were patently unreasonable.  However, at this juncture, to determine whether Plaintiff's revocation was reasonable is beyond the scope of a Rule 12(b)(6) motion because at this stage, the review is to determine if there is a plausible claim.

*2.    Defendant's Use of an ATDS*

Defendant next contends that Plaintiff's TCPA claim fails, since the Complaint does not allege sufficient facts to support her assertion that Defendant utilizes an ATDS system. Specifically, Defendant argues that Plaintiff has failed to state a claim since the device utilized was an "mGage," which two district courts have held is not an ATDS. *See Jenkins v. MGage, LLC*,

No. 14-2791, 2016 U.S. Dist. LEXIS 106769 (N.D. Ga. Aug. 12, 2016); *Dominguez v. Yahoo!, Inc.*, No. 13-1887, 2017 U.S. Dist. LEXIS 11346 (E.D. Pa. Jan. 27, 2017).  Plaintiff maintains that the Complaint sufficiently alleged Defendant's use of an ATDS.  Plaintiff focuses on the TCPA's prohibition on calls for advertising using *any* automatic telephone dialing system. (Pl.'s Br. 9) (emphasis added).

According to the TCPA, an ATDS is defined as "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. § 227(a)(l).  The TCPA's prohibition on ATDSs has expanded to include "both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (quoting *In re Rules and regulations Implementing the TCPA of 1991*, 18 F.C.C. Rcrd. 14014, 14115 (July 3, 2003) (hereinafter, "2003 Order").   "The FCC orders make clear that it is the capacity of the equipment, not its present use, that is the relevant inquiry." *Griffith v. Consumer Portfolio Serv., Inc.*, 838 F. Supp. 2d 723, 725-27 (N.D. Ill. 2011).

Here, for purposes of this motion, the Court is satisfied that the Complaint adequately alleges Defendant's use of an ATDS.  In her Complaint, Plaintiff specifically claims that Defendant has utilized an ATDS, in conflict with the TCPA regulations.  While Defendant asserts that it utilizes an mGage, rather than an ATDS, that is an assertion beyond the scope of the Complaint and not appropriate for purposes of this motion.  Moreover, the issue of whether the use of an mGage platform, which randomly dials and sends promotions through an automated and non-human system, falls within TCPA's prohibition is better suited to be addressed on summary judgment.  Accordingly, the Court determines that the Complaint sets forth a claim upon which relief may be granted.

11

In sum, the Court finds that the Complaint survives Defendant's Rule 12(b)(6) Motion to Dismiss. Plaintiff's Complaint recites a short and plain statement of the claim, showing that the pleader is entitled to relief. As the Court held in *Twombly*, the pleading does not require "detailed factual allegations," but it demands more than an unadorned, the-Defendant-unlawfully harmed-me accusation. *Twombly*, 550 U.S. at 555. Here, the Complaint is grounded in federal statute, the TCPA, and sets forth the facts directed to the violation of this statute. That is, the Complaint sets forth the fact that Plaintiff signed up for or consented to receive advertisement offers from Defendant by texting "JOIN" to a number owned by Defendant. Three days later, Plaintiff texted the same number, indicating that she did not wish to receive additional advertisement offers, and in effect wished to unsubscribe or revoke her consent.

III.    Rule 12(f) Motion to Strike Plaintiff's Class Allegations

Defendant next seeks for the Court to strike Plaintiff's class claims since she fails to satisfy the requirements of Rule 23. Plaintiff contends Defendant's motion is premature. The Court agrees.

"In reviewing a motion for class certification, a preliminary inquiry into the merits is sometimes necessary to determine whether the alleged claims can be properly resolved as a class action." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 168 (3d Cir. 2001). When evaluating a motion to strike allegations of a complaint, the court must accept as true all factual allegations in the complaint and view all reasonable inferences in the light most favorable to plaintiffs, just as on a motion to dismiss pursuant to Rule 12(b)(6). *Smikle v. Coca-Cola Enterprises, Inc.*, No. 03-1431, 2004 U.S. Dist. LEXIS 32028, at *8 (D.N.J. May 17, 2004). "Generally courts do not consider whether a proposed class meets the Rule 23 class requirements until after Plaintiffs move for class certification." *6803 Blvd. E., LLC v. DIRECTV, Inc.*, No. 12-

12

2657, 2012 U.S. Dist. LEXIS 106548 (D.N.J. July 31, 2012). However, a Defendant may move to strike class action allegations prior to discovery in rare cases "where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Landsman & Funk PC v. Skinder-Strauss Associates*, 640 F.3d 72, 93 n.30 (3d Cir. 2011).

In *Korman v. The Walking Co.*, 502 F. Supp. 2d 755, 762-63 (E.D. Pa. 2007), the court held that a motion to strike class allegations is premature when a Plaintiff has failed to file a motion for class certification. The court reasoned that a motion to strike class allegations under Rule 23 is, "for all practical purposes, identical to an opposition to a motion for class certification," and that "[i]t would be improper to allow Defendants to slip through the backdoor what is essentially an opposition to a motion for class certification before Plaintiffs have made such a motion and when discovery on the issue is still ongoing." *Id.* at 762; *see also Bell v. Money Resource Corp.*, No. 08-639, 2009 WL 382478, at *3 (E.D. Pa. Feb. 13, 2009).

Defendant relies on this court's decision in *In re Paulsboro Derailment Cases.*, No. 13-784, 2014 U.S. Dist. LEXIS 48209, at *14 (D.N.J. Apr. 8, 2014) for support of its contention that Plaintiff's class allegations should be stricken. In *Paulsboro*, the court held, "[a] court should grant a motion to strike class allegations only if the inappropriateness of class treatment is evident from the face of the complaint and from incontrovertible facts." *Id.* Here, the Court determines that motion to strike class allegations is premature at the current stage of the litigation. There are so many factual issues to be determine prior to considering class certification such as (a) whether Plaintiff manufactured her cause of action; (b) whether the S-T-O-P revocation process is reasonable under the FCC 2015 Order; and (c) whether Defendants utilized an ATDS. As such, the Court sees no reason to strike Plaintiff's class allegations pursuant Rule 12(f) at this stage of litigation.

IV.    Defendant's Request to Stay

Lastly, Defendant argues that the Court should stay this case while the D.C. Circuit Court of Appeals reviews the issue of revocation of consent in *ACA International v. Federal Communications Commission*, No. 15-1211, 2015 U.S. App. LEXIS 18554 (D.C. Cir. July 13, 2015).  Defendant summarizes that if this Court were to allow this case to proceed, "a key issue will be whether [Defendant's] system may require a specific, reasonable means (*i.e.*, a 'STOP' response to the automated system) for an individual to revoke consent previously given. (Def.'s Br. at 32).

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 708 (1997); *see also Landis v. North American Co.*, 299 U.S. 248, 254 (1936).  In determining whether to grant a stay, courts should consider the following factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether denial of the stay would create 'a clear case of hardship or inequity' for the moving party; (3) whether a stay would simplify the issues and the trial of the case[,] ; and (4) whether discovery is complete and/or a trial date has been set." *Akishev v. Kapustin*, 23 F. Supp. 3d 440, 446 (D.N.J. 2014) (internal quotation marks and citations omitted).

Here, the Court sees no reason to grant Defendant's request for a stay.  As discussed above, there are a number of factual issues that may be crystalized through discovery.  Indeed, once discovery has completed, the Court will be better suited to determine whether the pending[2] D.C. Circuit decision is dispositive of the present matter.  However, in light of the competing interests

---

[2] As of the date of this memorandum and order, the D.C. Circuit has yet to decide *ACA International v. Federal Communications Commission*.

14

of this case, Defendant's motion to stay is denied.

**ORDER**

It is on this 10TH day of January, 2018,

ORDERED that Defendant's Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1) (ECF No. 6) are DENIED; and it is further;

ORDERED that Defendant's Motion to Strike the Class Allegations is DENIED; and it is further;

ORDERED that Defendant's Motion to Stay is DENIED.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.